1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **GLORIA FRANCIS, on behalf of herself and all others similarly situated,** | **CASE NO.:** |
| **Plaintiff** | **CLASS ACTION** |
| **v.** | **COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF** |
| **CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE N.A. AND CAPITAL ONE BANK (USA)** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

Plaintiff Gloria Francis ("Plaintiff"), individually and on behalf of those similarly situated, brings this class action lawsuit against Defendant Capital One Financial Corporation, Capital One N.A. and Capital One Bank (USA) ("Capital One" or Defendant) based upon personal knowledge as to herself, and on information and belief as to all other matters.

**INTRODUCTION**

1.     "What's in your wallet?" Now that information is exposed on the internet thanks to a massive data breach by Capital One.

2.     Plaintiff brings this class action against Defendant for their failure to properly secure and safeguard personally identifiable information, including without limitation names, bank account numbers, dates of birth, address, social security numbers, self-reported income, telephone numbers and email addresses (collectively, "PII").

3.     On July 29, 2019, Capital One announced that its customers personal information had been breached.  Capital One advised that it determined there was unauthorized access to certain

1   types of personal information relating to people who had applied for its credit card products and to

2   credit card customers from 2005 through early 2019.[1]

3          4.      This Data Breach occurred because Defendants failed to implement adequate and

4   reasonable cyber-security procedures and protocols to protect customers' PII. Indeed, the

5   deficiencies in Defendants' data security protocols were so significant that 100 million individuals

6   were affected in the United States.

7          5.      Defendants disregarded the rights of Plaintiff and Class Members by: intentionally,

8   willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its

9   data systems were protected; failing to disclose to its customers the material fact that it did not have

10  adequate computer systems and security practices to safeguard their PII and failing to take available

11  steps to prevent the Data Breach;

12         6.      As a result of Defendants' failure to implement and follow basic security procedures,

13  Plaintiff's and Class Members' PII is now in the hands of thieves. As a result, Plaintiff and Class

14  Members face a substantial increased risk of identity theft. Consequently, Capital One's current and

15  former customers have had to spend, and will continue to spend, significant time and money in the

16  future to protect themselves due to Defendants' basic failures. As a result of Defendants' conduct

17  and the resulting Data Breach, Plaintiff and Class Members will be at a heightened risk of further

18  identity theft and fraud for the remainder of their lives.

19         7.      Plaintiff seeks, among other things, orders requiring Defendants to adopt reasonably

20  sufficient security practices and safeguards to prevent incidents like the Data Breach from occurring

21  in the future.

22         8.      Plaintiff, on behalf of all others similarly situated, alleges claims for negligence,

23  invasion of privacy, breach of implied contract, unjust enrichment and violation of Florida's

24  Deceptive and Unfair Trade Practices Act (Florida Statute § 501.203, et seq.).

25

26

27  _____

[1] Capital One Announces Data Security Incident (press.capitalone.com) July 29, 2019.

28

**PARTIES**

9.     Plaintiff Gloria Francis is a resident of Safety Harbor, Florida and applied for and obtained a Capital One credit card in 2012.  Upon information and belief, Mrs. Francis' personal and private information, along with other Capital One customers' PII , has been improperly exposed to unauthorized third parties. As a result of the breach Mrs. Francis and the other class members will continue to be at heightened risk for financial fraud and identity theft and their attendant damages for years to come.

10.     Defendant Capital One Bank is a national bank and corporation headquartered in Virginia.

11.     Capital One Financial Corporation is a national bank, one of the largest banks in the nation and holds over $300 billion in total assets as of 2019.  Capital One conducts business through its two primary subsidiaries Capital One Bank (USA) and Capital One, N.A.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are likely more than 100 putative class members, as Capital One admits the breach affected more than 100 million customers.

13.     This Court has jurisdiction over Defendants as they operate in this District. Plaintiff was a Capital One credit card holder and received credit card services within this District from where her PII was generated and input into Defendants' systems.  Through their business operations in this District, Defendants intentionally avail themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District. Mrs. Francis' PII was transmitted to Defendants and input into their systems within the District. Capital One does business in this District, likely maintains customer PII in the District and has caused harm to Plaintiff and Class members residing in this District.

CLASS ACTION COMPLAINT

1

2
**STATEMENT OF FACTS**

3
**A.  *Capital One Data Breach***

4
15.     On or about February 2, 2012, and again on December 1, 2012, Plaintiff applied for

5
and obtained a credit card with Capital One.   Plaintiff provided her personal information on the

6
credit card application.

7
16.     On July 29, 2019, Capital One announced that on July 19, 2019, it determined that an

8
outside individual gained unauthorized access and obtained certain types of personal information

9
about Capital One credit card customers and individuals who had applied for our credit products

10
from 2005 through early 2019.   This event affected approximately 100 million individuals in the

11
United States.   The configuration vulnerability was reported to us by an external security researcher

12
through our Responsible Disclosure Program on July 17, 2019.   We then began our own internal

13
investigation, leading to the July 19, 2019 discovery of the incident. This occurred on March 22,

14
2019 and March 23, 2019[2]

15
17.     Despite the fact the data breach initially occurred in March 2019, it was not until

16
three months later that the breach was discovered on July 19, 2019 after someone informed Capital

17
One of the exposed information.   Despite this, however, Plaintiff and class members were not

18
immediately notified of the breach directly but learned that their PII had been compromised through

19
a public announcement ten (10) days later.

20
**B.  *Value of Personally Identifiable Information***

21
18.     The FTC defines identity theft as "a fraud committed or attempted using the

22
identifying information of another person without authority."[3]   The FTC describes "identifying

23
information" as "any name or number that may be used, alone or in conjunction with any other

24

25
_____

26
[2] www.capitalone.com/facts2019/

27
[3] 17 C.F.R § 248.201 (2013).

28

CLASS ACTION COMPLAINT

information, to identify a specific person."[4] The FTC acknowledges that identity theft victims must spend countless hours and large amounts of money repairing the impact to their good name and credit record.[5]

19.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[6] As a result of large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, Social Security numbers and other PII directly on various Internet websites making the information publicly available. These networks and markets consist of hundreds of thousands, if not millions, of nefarious actors who view and access the PII.

20.     Professionals tasked with trying to stop fraud and other misuse know that PII has real monetary value in part because criminals continue their efforts to obtain this data.[7] According to the Identity Theft Resource Center, 2017 saw 1,579 data breaches, representing a 44.7 percent increase over the record high figures reported a year earlier.[8]

21.     Defendants knew the importance of safeguarding PII and of the foreseeable consequences that would occur if their data security systems were breached, including the significant costs that would be imposed on their customers as a result of a breach.

C.  *Defendants Acquire, Collect, and Store Plaintiff's and Class Members' PII*

22.     Defendants acquire, collect, store, and maintain a massive amount of protected personally identifiable data of their customers.

---

[4] *Id.*

[5]     *Guide for Assisting Identity Theft Victims*, FTC (Sep. 2013), *available at*: https://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf (the "FTC Guide").

[6]     FTC Guide, *supra* n.9.

[7] *Data Breaches Rise as Cybercriminals Continue to Outwit IT*, *CIO Magazine*, https://www.cio.com/article/2686167/data-breach/data-breaches-rise-as-cybercriminals-continue-to-outwit-it.html (last visited January 23, 2019).

[8] *2017 Annual Data Breach Year-End Review*, https://www.idtheftcenter.org/2017-data-breaches, (last visited January 23, 2019).

23.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the Class Members' PII, Defendants assumed legal and equitable duties to those individuals. Defendants knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from disclosure.

24.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and the Class Members, as current and former customers, relied on Defendants to keep their PII confidential and securely maintained, to use this information for legitimate business purposes only.

### D.  *Defendants' Privacy Policies*

25.     Defendants acknowledge their obligation to maintain the privacy of their customers' PII.

26.     Safeguarding information is essential to our mission and our role as a financial institution.   We have invested highly in cybersecurity and will continue to do so.   We will incorporate the learnings from this incident to further strengthen our cyber defenses.[9]

27.     Yet, Capital One has not learned from similar incidents in the past because this is not their first data breach.  In 2014 and 2017, Capital One suffered two other data breaches when their customers information was accessed and exposed.

### E.  *Defendants' Conduct Violates Industry Standard Practices*

28.     Defendants' Data Disclosure resulted from a combination of insufficiencies that indicate Defendants failed to comply with safeguards mandated by industry standards. Defendants' security failures include, but are not limited to:

    a.   Failing to maintain an adequate data security system to prevent data loss;

    b.   Failing to mitigate the risks of a data breach and loss of data;

    c.   Failing to adequately catalog the location of customers', including Plaintiff's and Class Members', digital information;

    d.   Failing to encrypt Plaintiff's and Class Members' PII;

---

[9] www.capitalone.com/facts2019/FAQ

### F. *Plaintiff and Class Members Suffered Damages*

29.    The ramifications of Defendants' failure to keep customers' PII secure are long lasting and severe.  Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

30.    The PII belonging to Plaintiff and Class members is private in nature and was left inadequately protected by Defendants who did not obtain Plaintiff's or Class members' consent to disclose their PII to any other person as required by applicable law and industry standards.

31.    The Data Breach was a direct and proximate result of Defendants' failure to: (a) properly safeguard and protect Plaintiff's and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' PII; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

32.    Defendants had the resources necessary to prevent a breach, but neglected to adequately invest in data security, despite their commitments to protecting customer data.

33.    Had Defendants remedied the deficiencies in their data security systems, adopted security measures recommended by experts in the field, they would have prevented the intrusions into their systems and, ultimately, the theft of PII.

34.    As a direct and proximate result of Defendants' wrongful actions and inaction, Plaintiff and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives. The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used

CLASS ACTION COMPLAINT

for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[10]

35.     Victims are burdened with trying to resolve the problems including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured.

36.     To date, Capital One has offered customers only 2-year credit monitoring.[11]   As discussed above, victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft. In addition, Defendants' offer does not address any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

37.     As a result of the Defendants' failures to prevent the Data Breach, Plaintiffs and Class members have suffered, will suffer, or are at increased risk of suffering:

     a.   The compromise, publication, theft and/or unauthorized use of their PII;

     b.   Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

     c.   Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

[10] U.S. Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft*, (as of April 19, 2019) at www.bjs.gov.

[11] See, Exhibit A. ("To help you detect any possible misuse of your personal information, we are offering you, and Availity has agreed to pay for, 2 years of LifeLock Identity Theft Protection Services.")

1
2
3
    d.  The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake appropriate measures to protect the PII in their possession; and

4
5
6
    e.  Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class members.

7
8
9
38.   In addition to a remedy for the economic harm, Plaintiff and the Class maintain an undeniable interest in ensuring that their PII is secure, remains secure, and is not subject to further theft.

10
### CLASS ACTION ALLEGATIONS

11
12
13
39.   Plaintiff seeks relief on behalf of herself and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a Nationwide class defined as follows:

14
15
All persons residing in the United States who applied for Capital One credit card products and whose personal information was compromised as a result of the Data Breach announced by Capital One on July 29, 2019 (the "Class").

16
17
18
40.   Excluded from the Class are Defendants and any of its affiliates, parents or subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

19
20
41.   Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

21
22
42.   The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

23
24
25
26
27
43.   **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the current number of customers affected in the Data Breach is unknown, upon information and belief, it is in excess of one million people, and therefore meets the numerosity requirement of 23(a)(1).

28

CLASS ACTION COMPLAINT

44.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

      a.   Whether Defendants had a duty to protect customer PII;

      b.   Whether Defendants knew or should have known of the susceptibility of their systems to a data breach;

      c.   Whether Defendants' security measures to protect their systems were reasonable in light of the FTC data security recommendations, and best practices recommended by data security experts;

      d.   Whether Defendants were negligent in failing to implement reasonable and adequate security procedures and practices;

      e.   Whether Defendants' failure to implement adequate data security measures allowed the breach of its data systems to occur;

      f.   Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the unlawful exposure of the Plaintiff's and Class members' PII;

      g.   Whether Plaintiff and Class members were injured and suffered damages or other losses because of Defendants' failure to reasonably protect its systems and data network; and,

      h.   Whether Plaintiff and Class members are entitled to relief.

45.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of other Class members. Plaintiff is a consumer who provided Capital One with PII and whose PII was compromised in the Data Breach. Plaintiff's damages and injuries are akin to other Class members, and Plaintiff seeks relief consistent with the relief sought by the Class.

46.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class she seeks to represent; is committed to pursuing this matter against Defendants to obtain relief for the Class; and has no conflicts of interest with the Class. Moreover, Plaintiff's Counsel are competent and experienced in litigating class actions. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

47.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

48.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

49.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

CLASS ACTION COMPLAINT

a. Whether Defendants failed to timely notify the public of the Data Breach;

b. Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c. Whether Defendants' security measures to protect its data systems were reasonable in light FTC data security recommendations, and other best practices recommended by data security experts;

d. Whether Defendants failed to take commercially reasonable steps to safeguard customer PII; and

e. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

50.    Finally, all members of the proposed Classes are readily ascertainable. Defendants have access to customer names and addresses affected by the Data Breach. Using this information, Class members can be identified and ascertained for the purpose of providing notice.

## FIRST CAUSE OF ACTION
### Negligence

51.    Plaintiff restates and realleges paragraphs 1 through 50 above as if fully set forth herein.

52.    As a condition of receiving products and services from Capital One, Plaintiff and Class members were obligated to provide Capital One with their PII.

53.    Plaintiff and the Class members entrusted their PII to Capital One with the understanding that Capital One would safeguard their information.

54.    Defendants had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class members could and would suffer if the PII were wrongfully disclosed.

55.    Defendants had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.  This duty includes, among other things, designing, maintaining and testing the Defendants' security protocols to ensure that Plaintiff's and Class members' information in its

1   possession was adequately secured and protected and that employees tasked with maintaining such

2   information were adequately training on cyber security measures regarding the security of customer

3   information.

4          56.    Plaintiff and the Class members were the foreseeable and probable victims of any

5   inadequate security practices and procedures. Defendants knew of or should have known of the

6   inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of

7   providing adequate security of that PII, the current cyber scams being perpetrated on employers, and

8   that it had inadequate employee training and education and IT security protocols in place to secure

9   the PII of Plaintiff and the Class.

10         57.    Defendants' own conduct created a foreseeable risk of harm to Plaintiff and Class

11  members. Defendants' misconduct included, but was not limited to, its failure to take the steps and

12  opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included

13  its decision not to comply with industry standards for the safekeeping and encrypted authorized

14  disclosure of the PII of Plaintiff and Class members.

15         58.    Plaintiff and the Class members had no ability to protect their PII that was in Capital

16  One's possession.

17         59.    Defendants were in a position to protect against the harm suffered by Plaintiff and

18  Class Members as a result of the Data Breach.

19         60.    Defendants had a duty to have proper procedures in place to prevent the unauthorized

20  dissemination Plaintiff and Class members' PII.

21         61.    Defendants have admitted that Plaintiff's and Class members' PII was wrongfully

22  disclosed to unauthorized third persons as a result of the Data Breach.

23         62.    Defendants, through their actions and/or omissions, unlawfully breached their duty to

24  Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding the

25  Plaintiff's and Class members' PII while it was within the Capital One's possession or control.

26         63.    Defendants improperly and inadequately safeguarded Plaintiff's and Class Members'

27  PII in deviation of standard industry rules, regulations and practices at the time of the Data Breach.

28

64.     Defendants, through their actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of its customers' PII.

65.     Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately disclose to Plaintiff and Class members the existence, and scope of the Data Breach.

66.     But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff's and Class members' PII would not have been compromised.

67.     There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the PII of current and former customers and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class.

68.     As a result of Defendants' negligence, Plaintiff and the Class members have suffered and will continue to suffer damages and injury including, but not limited to: out-of-pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, the costs associated therewith; time spent monitoring, addressing  and correcting the current and future consequences of the Data Breach; and the necessity to engage legal counsel and incur attorneys' fees, costs and expenses.

## SECOND CAUSE OF ACTION
### Invasion of Privacy

69.     Plaintiff restates and realleges paragraphs 1 through 50 above as if fully set forth herein.

70.     Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

71.     Defendants owed a duty to their customers, including Plaintiff and Class Members, to keep their PII contained as a part thereof, confidential.

72.     Defendants failed to protect and released to unknown and unauthorized third parties unencrypted computer hard drives containing the PII of Plaintiff and Class Members.

73.     Defendants allowed unauthorized and unknown third parties unfettered access to and examination of the PII of Plaintiff and Class Members, by way of Defendants' failure to prevent the creation of fraudulent accounts on its network portal.

74.     The unauthorized release of PII is highly offensive to a reasonable person.

75.      The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PII to Defendants as part of their use of Defendants' services, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

76.     The Data Disclosure at the hands of Defendants constitutes an intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

77.     Because Defendants acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

78.     As a proximate result of the above acts and omissions of Defendants, the PII of Plaintiff and Class Members was disclosed to and used by third parties without authorization, causing Plaintiff and Class Members to suffer damages.

79.     Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII maintained by Defendants can be viewed, distributed, and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

### THIRD CAUSE OF ACTION
**Breach of Implied Contract**

80.     Plaintiff restates and realleges paragraphs 1 through 50 above as if fully set forth herein.

81.     Plaintiff and Class Members were required to provide their PII, including names, addresses, social security numbers, self-reported income and dates of birth to Defendants as a condition of their use of Defendants' services.

82.     Plaintiff and Class Members paid money to Defendants in exchange for goods and services, as well as Defendants' promises to protect their PII from unauthorized disclosure.

83.     Implicit in the agreement between the Defendants' customers, including Plaintiff and Class Members, to provide PII, and Defendant acceptance of such protected PII, was Defendants' obligation to use the PII of their customers for its business purpose only, take reasonable steps to secure and safeguard that protected PII, and not allow access to PII to unauthorized third parties.

84.     Further, implicit in the agreement, Defendants were obligated to provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their protected PII.

85.     Without such implied contracts, Plaintiff and Class Members would not have provided their PII to Defendants.

86.     Defendants had an implied duty to reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses.

87.     Additionally, Defendants implicitly promised to retain this PII only under conditions that kept such information secure and confidential.

88.     Plaintiff and Class Members fully performed their obligations regarding PII under the implied contract with Defendants; however, Defendants did not.

89.     Defendants breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' PII, which was compromised as a result of the Data Disclosure.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

90.     Plaintiff restates and realleges paragraphs 1 through 50 above as if fully set forth herein.

91.     Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they purchased goods and services from Defendants and provided Defendants with their PII. In exchange, Plaintiff and Class Members should have received from Defendants the goods and services that were the subject of the transaction and should have been entitled to have Defendants protect their PII with adequate data security.

92.     Defendants knew that Plaintiff and Class Members conferred a benefit on Defendants and accepted and have accepted or retained that benefit. Defendants profited from the purchases and used the PII of Plaintiff and Class Members for business purposes.

93.     The amounts Plaintiff and Class Members paid for Defendants' goods and services were used, in part, to pay for the administrative costs of data management and security.

94.     Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed to implement the data management and security measures that are mandated by industry standards.

95.     Defendants failed to secure the PII of Plaintiff and Class Members and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

96.     Defendants acquired the PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

97.     If Plaintiff and Class Members knew that Defendants would not secure their PII using adequate security, they would not have made purchases with Defendants.

98.     Plaintiff and Class Members have no adequate remedy at law.

99.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity as to how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Disclosure, including but not limited to efforts spent researching how to

CLASS ACTION COMPLAINT

prevent, detect, contest, and recover from identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Disclosure for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of Defendants' goods and services they received.

100.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

101.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendants empty promises of security.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *et seq.***
**(ON BEHALF OF THE FLORIDA STATEWIDE CLASS)**

102.    Plaintiff restates and realleges Paragraphs 1 through 50 as if fully set forth here.

103.    Plaintiff and Florida Class members are consumers or former customers of Capital One.  They purchased credit card products primarily for personal, family, or household purposes.

104.    Defendants engaged in the conduct alleged in this Complaint, entering into transactions intended to result, and which did result, in the procurement of credit card products on behalf of Plaintiff and Florida Class members.

105.    Defendants engaged in, and its acts and omissions affect, trade and commerce. Defendants' acts, practices, and omissions were done in the course of Defendants' business of marketing, offering credit card services throughout the United States.

CLASS ACTION COMPLAINT

106.   Defendants, operating in Florida, engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204(1), including but not limited to the following:

>   a.   failure to maintain adequate computer systems and data security practices to safeguard customer PII;

>   b.   failure to disclose that its computer systems and data security practices were inadequate to safeguard customer PII from theft;

>   c.   failure to timely and accurately disclose the Data Breach to Florida Plaintiff and Florida Class members;

>   d.   continued acceptance and storage of customer PII after Defendants knew or should have known of the security vulnerabilities of its network that were exploited in the Data Breach; and,

>   e.   continued acceptance and storage of customer PII after Defendants knew or should have known of the Data Breach and before it allegedly remediated the Data Breach.

107.   These unfair acts and practices violated duties imposed by laws, including by not limited to Fla. Stat. § 501.171(2).

108.   As a direct and proximate result of Defendants' violation of the Florida Unfair and Deceptive Trade Practices Act, Plaintiff and Florida Class members suffered damages including, but not limited to damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by closely reviewing and monitoring their financial transactions for unauthorized activity, filing police reports, and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

109.    Also as a direct result of Defendants' knowing violation of the Florida Unfair and Deceptive Trade Practices Act, Florida Plaintiff and Florida Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a.  Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

d.  Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants is compromised, hackers cannot gain access to other portions of Defendants systems;

e.  Ordering that Defendants purge, delete, and destroy customer PII not necessary for its provisions of services in a reasonably secure manner;

f.  Ordering that Defendants conduct regular database scans and security checks;

g.  Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  Ordering Defendants to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Defendants customers should take to protect themselves.

110.    Plaintiff brings this action on behalf of herself and Florida Class members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions

CLASS ACTION COMPLAINT

and to protect Plaintiff, Florida Class members and the public from Defendants' unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Defendants' wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

111. The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Florida Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

112. Defendants knew or should have known that its computer systems and data security practices were inadequate to safeguard Florida Class members' Customer Data and that the risk of a data breach or theft was high.

113. Defendants' actions and inactions in engaging in the unfair practices and deceptive acts described herein were negligent, knowing and willful, and/or wanton and reckless.

114. Plaintiff and Florida Class members seek relief under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*, including, but not limited to, damages, restitution, injunctive relief, and/or attorney fees and costs, and any other just and proper relief.

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief:

    a. An Order certifying this case as a class action;

    b. An Order appointing Plaintiff as the class representative;

    c. An Order appointing undersigned counsel as class counsel;

    d. A mandatory injunction directing the Defendants to hereinafter adequately safeguard the PII of the Class by implementing improved security procedures and measures;

    e. An award of damages;

    f. An award of costs and expenses;

    g. An award of attorneys' fees; and

1    h.   Such other and further relief as this court may deem just and proper.29%

2    **<u>DEMAND FOR JURY TRIAL</u>**

3    Plaintiff demands a jury trial as to all issues triable by a jury.

4

5  Dated:  August 2, 2019

6                                          Respectfully submitted,

7                                          <u>William "Billy" Peerce Howard</u>
8                                          William "Billy" Peerce Howard, Esq.
                                           Florida Bar No.: 0103330
9                                          Billy@TheConsumerProtectionFirm.com
                                           Heather H. Jones, Esq.
10                                         Florida Bar No.: 0118974
11                                         Heather@TheConsumerProtectionFirm.com
                                           The Consumer Protection Firm
12                                         4030 Henderson Boulevard
                                           Tampa, FL 33629
13                                         Telephone: (813) 500-1500
                                           Facsimile: (813) 435-2369
14                                         *Attorney for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28